Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY COFFMAN,<br><br>   Plaintiff,<br><br>   v.<br><br>PERCEPTRON, INC., JAY W. FREELAND, C. RICHARD NEELY JR., JOHN F. BRYANT, JAMES A. RATIGAN, WILLIAM C. TAYLOR, and SUJATHA KUMAR,<br><br>   Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Guy Coffman ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### **NATURE OF THE ACTION**

1.  This is an action against Perceptron, Inc. ("Perceptron" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Perceptron by Atlas

1

Copco North America LLC ("Atlas") and Odyssey Acquisition Corp. ("Merger Sub"), a direct wholly owned subsidiary of Atlas.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Perceptron's common stock.

7. Defendant Perceptron develops, produces, and sells various automated industrial metrology products and solutions to manufacturing organizations for dimensional gauging, dimensional inspection, and 3D scanning in Europe, Asia, and the Americas. The Company is

incorporated in Michigan. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "PRCP."

8. Defendant Jay W. Freeland ("Freeland") is Interim Chief Executive Officer ("CEO") and Chairman of the Board of the Company.

9. Defendant C. Richard Neely Jr. ("Neely") is a director of the Company.

10. Defendant John F. Bryant ("Bryant") is a director of the Company.

11. Defendant James A. Ratigan ("Ratigan") is a director of the Company.

12. Defendant William C. Taylor ("Taylor") is a director of the Company.

13. Defendant Sujatha Kumar ("Kumar") is a director of the Company.

14. Defendants Freeland, Neely, Bryant, Ratigan, Taylor, and Kumar are collectively referred to herein as the "Individual Defendants."

15. Defendants Perceptron and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

16. On September 28, 2020, Perceptron issued a press release announcing that it had entered into a definitive agreement to be acquired by Atlas for $7.00 per share. The press release states, in pertinent part:

> **Perceptron Enters into Definitive Agreement to be Acquired by Atlas Copco**
>
> September 28, 2020 07:00 ET | **Source:** Perceptron, Inc.
>
> *All-Cash Transaction Values Perceptron at an Equity Valuation of Approximately $68.9 million*
>
> *71% Premium to Equity Closing Price on September 25, 2020; 192% Premium to 2020 Low*

3

PLYMOUTH, Mich., Sept. 28, 2020 (GLOBE NEWSWIRE) -- Perceptron, Inc. (NASDAQ: PRCP), a leading global provider of 3D automated metrology solutions and coordinate measuring machines, today announced that it has entered into a definitive agreement (or the "Agreement") to be acquired by Atlas Copco, a world-leading provider of sustainable productivity solutions headquartered in Stockholm, Sweden, for $7.00 per share. The all-cash transaction values Perceptron at an equity valuation of approximately $68.9 million.

Under the terms of the agreement, Perceptron shareholders will receive $7.00 per share in cash for each share of common stock held. This consideration represents a premium of approximately 66% to the 30-day average closing share price of $4.22 as of September 25, 2020. The Board of Directors has unanimously approved the agreement and recommends that all shareholders vote in favor of the transaction. Harbert Discovery Fund, L.P., Perceptron's largest shareholder with approximately 10.5% of the total shares outstanding, has signed a Voting and Support Agreement in favor of the proposed transaction. The transaction is expected to close during the calendar fourth quarter 2020, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

"Since our inception nearly 40 years ago, Perceptron has grown to become a leading metrology brand, one recognized for its ability to provide advanced flexible automation and quality control solutions to a diverse mix of global customers," stated Jay Freeland, Chairman and Interim CEO of Perceptron. "Atlas Copco recognized the long-term, unrealized value evident in our business, as reflected by a compelling cash offer at a significant premium."

"After careful consideration, our Board of Directors came to the conclusion that a sale of the Company to Atlas Copco would be the optimal outcome for all shareholders and Perceptron employees," continued Freeland. "As a respected, well-capitalized organization with global reach, Atlas Copco is an ideal fit for our company. Atlas Copco's leadership position across a broad array of industrial markets, combined with a growing presence in the machine vision space, will allow them to fully leverage our technology to the benefit of existing and new customers, all while realizing economies of scale with the potential to support growth. We are excited by the opportunities that lay ahead for our combined organizations and recommend that Perceptron shareholders vote in favor of the Agreement and the transaction."

Perceptron engaged XMS Capital Partners, LLC as its financial advisor, Dykema Gossett PLLC as its legal advisor and Vallum Advisors LLC as its financial communications advisor on this transaction.

**ABOUT PERCEPTRON®**

Perceptron (NASDAQ: PRCP) develops, produces and sells a comprehensive range of automated industrial metrology products and solutions to manufacturing

organizations for dimensional gauging, dimensional inspection and 3D scanning. Products include 3D machine vision solutions, robot guidance, coordinate measuring machines, laser scanning and advanced analysis software. Global automotive, aerospace and other manufacturing companies rely on Perceptron's metrology solutions to assist in managing their complex manufacturing processes to improve quality, shorten product launch times and reduce costs. Headquartered in Plymouth, Michigan, Perceptron has subsidiary operations in Brazil, China, Czech Republic, France, Germany, India, Italy, Japan, Slovakia, Spain and the United Kingdom. For more information, please visit **www.perceptron.com**.

17. On October 21, 2020, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

18. The Proxy Statement, which recommends that Perceptron shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) the financial analyses performed by Perceptron's financial advisor, XMS Capital Partners, LLC ("XMS"), in connection with its fairness opinion; (2) potential conflicts of interest involving XMS; and (3) the sales process leading up to the Proposed Transaction.

19. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Company's Board of Directors; (iii) Reasons for the Merger; and (iv) Opinion of XMS Capital Partners, LLC.

20. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Perceptron shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

5

1. **Material Omissions Concerning XMS' Financial Analyses**

21. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning XMS' financial analyses.

22. The Proxy Statement fails to disclose the following concerning XMS' "*Discounted Cash Flow Analysis*": (1) the stand-alone unlevered, after-tax free cash flows that the Company was forecasted to generate during the fiscal years ending June 30, 2021 through June 30, 2025, and from June 30, 2021 through June 30, 2030, all based on Company management forecasts; (2) all line items underlying the free cash flows; (3) the terminal values of the Company; and (4) the individual inputs and assumptions underlying the (i) range of EBITDA exit multiples of 8.0x to 10.0x, and (ii) discount rate of 14.0% to 16.0%.[1]

23. With respect to XMS' "*Selected Comparable Company Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by XMS in its analyses.

24. With respect to XMS' "*Offer Price Premia Analysis*," the Proxy Statement fails to disclose the individual premiums paid in each transaction selected by XMS.

25. The valuation methods, underlying assumptions, and key inputs used by XMS in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of XMS' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand XMS' fairness opinion and analyses,

---

[1] In arriving at its opinion, XMS "reviewed and held discussions with the Company's management concerning certain financial forecasts and other information and data relating to the Company, which were provided to XMS by management of the Company[.]" *See* Proxy Statement at 45-46.

and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Potential Conflicts of Interest Involving XMS

26. The Proxy Statement omits material information concerning potential conflicts of interest involving XMS.

27. The Proxy Statement provides that, "[i]n the prior two-year period, XMS did not receive any fees from the Company other than those related to its engagement relating to the merger."

28. The Proxy Statement, however, fails to disclose whether and to what extent XMS provided services to Atlas and/or its affiliates, including the timing and nature of the services provided and the amount of compensation received for such services, in the two years prior to the date of XMS' fairness opinion.

29. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

31. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

32. The Proxy Statement provides that Perceptron entered into confidentiality agreements with 68 strategic and potential buyers. In April 2020, Perceptron also executed an amendment to its existing confidentiality agreement with Party C. In September 2020, Perceptron also executed a confidentiality agreement with Party B.

33. The Proxy Statement, however, fails to disclose the terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

34. Without this information, Perceptron shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Perceptron shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

35. Further, the Proxy Statement provides that, on "May 12, 2020, a representative of an investment banking firm who had a prior business relationship with Mr. Freeland, called Mr. Freeland to inform him that [Atlas] may be interested in a transaction with the Company." *See* Proxy Statement at 33.

36. Defendant Freeland, Perceptron's Interim CEO and Chairman of the Board, played a key role in negotiating the material terms of the Proposed Transaction.

37. The Proxy Statement, however, fails to identify the investment banking firm and disclose the nature of Defendant Freeland's "prior business relationship" with the firm, including: (i) their interactions leading up to the Proposed Transaction; (ii) when their relationship was

8

disclosed with the Board, if at all; and (iii) whether the Board considered whether there was a potential conflict of interest.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

42. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

10

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 2, 2020 Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*